# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In re: <br><br> MERIDIAN MEDICAL SYSTEMS, LLC <br><br> Debtor(s) | Chapter 7 <br><br> Case No. 15-20640 |
| NATHANIEL HULL, CHAPTER 7 TRUSTEE OF ESTATE OF MERIDIAN MEDICAL SYSTEMS, LLC <br><br> Plaintiff/Counterclaim Defendant <br><br> v. <br><br> KENNETH CARR AND APPLIED THERMOLOGIC, LLC, <br><br> Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs <br><br> JEFFREY CARR AND ROBERT ALLISON, <br><br> Third-Party Party Defendants | Adv. Proc. No. 15-2028 |

## MEMORANDUM OF DECISION

This matter is before me on Kenneth Carr's ("Kenneth") Motion to Remand Adversary Proceeding to State of Maine, Business and Consumer Court (Docket Entry ("DE")) 151. After consideration of the parties' positions as set forth in their filings and as presented in court, I will deny the relief sought by Kenneth for the reasons set forth below.

**I.     Facts.**

Kenneth is the founder of Meridian Medical Systems, LLC (the "Debtor"), a closely held company. Until 2010, he owned 99% of the Debtor and served as its Manager, Chairman, CEO, Treasurer, and Secretary. In late 2010, Kenneth gave his son Jeffrey Carr ("Jeffrey") an ownership interest in the company, and in 2011 Robert Allison ("Robert") became a member. Between 2010 and 2013 it appears that Kenneth also made significant loans to the company. In 2013, after a falling out with Kenneth, Jeffrey and Robert removed him from the Debtor's management. In response, Kenneth then founded Applied Thermologic, LLC ("Applied"), a new company. Shortly thereafter, litigation ensued.

In May 2014, the Debtor filed a 10-count Complaint[1] (the "Complaint") in Cumberland County Superior Court against Kenneth and Applied. Kenneth and Applied answered the Complaint, filed counterclaims[2] (the "Counterclaims"), and also filed a third-party complaint against Jeffrey and Robert (the "Third-Party Complaint").[3] Jeffrey and Robert filed counterclaims against Kenneth in response to the Third-Party Complaint. In the state court litigation, Kenneth made a jury trial demand, and on October 9, 2015, he also filed a demand for a jury trial in this Court. That demand has been objected to by all other parties in this adversary, and remains pending.

The Debtor filed for Chapter 11 relief on September 11, 2015, and promptly removed the state court litigation to the Bankruptcy Court on September 25th.

---

[1] The counts of the Complaint included breach of contract, misappropriation of trade secrets, conversion, breaches of fiduciary duty, fraudulent concealment, and negligent misrepresentation. The Complaint also sought preliminary and permanent injunctive relief.

[2] The counts of the Counterclaim include counts for money lent, inspection of books and records, and declaratory judgment.

[3] The Third-Party Complaint contains counts for breach of fiduciary duty, violations of the Maine Limited Liability Company Act, breach of contract, and both negligent and intentional infliction of emotional distress.

Early in 2016, both Jeffrey and Robert filed claims against the Debtor's estate, for indemnification of any liability that might arise out of this litigation. The stated source of the indemnification claims is the Debtor's Operating Agreement, dated December 31, 2011. Neither Kenneth nor Applied filed proofs of claim in the Debtor's case.

On August 17, 2016, the bankruptcy case was converted to Chapter 7 and Nathaniel Hull, Esq. ("Trustee") was appointed as the Chapter 7 Trustee.

On October 9, 2015, at the outset of this adversary proceeding, Kenneth filed a Motion to Abstain and/or Remand (the "First Remand Motion") (DE 8). The First Remand Motion was predicated on three grounds: mandatory abstention under 28 U.S.C. § 1334(c)(2), permissive abstention under 28 U.S.C. § 1334(c)(1), and remand under 28 U.S.C. § 1452(b). The Debtor, Jeffrey, and Robert all filed objections, and I denied the First Remand Motion by Order dated December 9, 2015. Following my denial of Kenneth's Motion for Findings of Fact and Conclusions of Law, Kenneth filed a Motion for Leave to Appeal (DE 60), which was denied by the District Court on June 10, 2016. In its denial, the District Court took particular notice of my concern that this matter be timely adjudicated, and noted my belief that the case would be moved along with alacrity in this Court.

## II.     The Parties' Positions.

### a.     Kenneth and Applied.

Kenneth filed his second motion to remand on July 4 (DE 151). Unlike in the First Remand Motion, this time around Kenneth puts all of his eggs in one basket: 28 U.S.C. § 1452(b), which states:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is

3

> not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United Sates under section 1254 of this title.

Kenneth cites *S. Marine & Indus. Servs., Inc. v. AK Eng'g, Inc. (In re AK Servs., Inc.),* 159 B.R. 76 (Bankr. D. Mass. 1993), as authority for the correct interpretation of the phrase "any equitable ground" in § 1452. The *AK Servs.* court, quoting *Seale v. Owens & O-M Mgmt. Grp., Inc.,* 134 B.R. 181, 184 (Bankr. E.D. La. 1991), listed 8 "equitable grounds for remand:"

> (1) forum non conveniens; (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) a holding that a state court is better able to respond to questions involving state law; (4) expertise of the particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of an inconsistent result.

*In re AK Servs., Inc.,* 159 B.R. at 80. In addition to seeing no other result than that each of the listed grounds supports him, Kenneth urges that limits on this Court's jurisdiction and "constitutional issues" also favor his cause.

Kenneth argues that all of the claims asserted in this case are state law causes of action, not arising from the Bankruptcy Code or any other federal statute, and are therefore non-core within the meaning of 28 U.S.C. § 157(b). According to him, I, *at best*, have "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and that is only with respect to the "primary" claims asserted by the Debtor against Kenneth and Applied. As for the third-party claims between Kenneth, Jeffrey, and Robert, Kenneth unequivocally states that this Court has no jurisdiction at all because "regardless of the outcome of the Third-Party Claims . . . there will be no impact, tangible or otherwise, to Debtor's estate." Finally, because Kenneth has asserted a right to jury trial, he believes that remanding to the state court will be the best way to efficiently deal with the entire case.

b.    The Trustee.

The Trustee, unsurprisingly, disagrees with Kenneth's conclusions. The Trustee argues that, with the exception of two claims of Kenneth's against the Debtor (for [allegedly] money lent and consulting fees not paid), all of the claims asserted by all of the parties in this case arise from the same set of facts.[4] He notes that he is currently holding the proceeds from the sale of substantially all of the Debtor's assets, pending the results of this litigation and a determination of the ownership rights of the parties in certain technologies,[5] and that the determination of those rights is clearly a core matter over which this Court has jurisdiction. The Trustee further notes that, because Jeffrey and Robert have both filed indemnification claims against the estate,[6] Kenneth's third-party claims against them are, for all intents and purposes, claims against the estate. The Trustee argues that the Debtor has claims against Kenneth, Jeffrey, and Robert and that therefore this litigation is akin to a claims allowance and objection process in which the contours of the estate must be determined before he can begin winding up its affairs and making distributions. Finally, the Trustee notes that both this Court and the District Court have ruled on these issues before, and the District Court, in particular, concluded that "It is apparent … that the Bankruptcy Judge concluded that the most efficient adjudication would occur in the Bankruptcy Court."[7]

---

[4] The Trustee notes that the state court denied Kenneth's motion to bifurcate the Debtor's and his claims from his claims against Jeffrey and Robert in May 2015 because of the "expected overlap in factual allegations at the heart of the claims and defenses made for and against the parties."

[5] In fact, the Trustee has not actually asked for a determination of the rights of the parties in the "Cool Cable Technology" yet. In his Objection, the Trustee asserts that he intends to seek leave to amend the Complaint to do so.

[6] Claims Register, claims 3-1 and 4-1.

[7] Although he does not call it this, the Trustee is making a law of the case argument regarding the earlier denial of Kenneth's First Remand Motion. *E.g., Ellis v. United States,* 313 F.3d 636, 646 (1st Cir. 2002) ("a court ordinarily ought to respect and follow its own rulings").

5

The Trustee cites a different remand standard than Kenneth. He suggests that the correct inquiry is to look at what is "reasonable, fair, or appropriate," *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 237, 245 (3rd Cir. 2007). For help in making such a determination, the Trustee points me to *Schumacher v. White,* 429 B.R. 400, 405 (E.D.N.Y. 2010) (citing *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 407 (Bankr. S.D.N.Y. 1991)), where the court considered the following factors:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

The Trustee suggests that § 1452(b) was not meant to constrain a court, but rather to provide guidance. He points to Kenneth's *very* active involvement in both the main bankruptcy case and this adversary, the close relatedness of all of the actors (including that all of the individual parties are insiders of the Debtor), and the fact that virtually all of the factual allegations in the Complaint and the Third-Party Complaint are the same, as strong factors in favor of denying Kenneth's Motion.

With respect to what are probably Kenneth's strongest two arguments--his potential right to a jury trial which cannot be tried in the Bankruptcy Court (without his consent) and the question of jurisdiction over the third-party claims--the Trustee makes the following points. First, even if Kenneth is entitled to a jury trial (which he does not concede) he can get one in the District Court. The Trustee argues that because of this scenario, and because so few cases actually end up going to trial, this aspect of Kenneth's argument should be given little weight. Second, the Trustee does not concede that this Court has no jurisdiction over the third-party

claims.[8] Even if they are non-core claims and Kenneth doesn't consent to this Court's entry of a final judgment, the litigation can proceed in the Bankruptcy Court up to trial, and then go to the District Court.

    c.    Jeffrey and Robert.

Jeffrey and Robert, in addition to joining the Trustee's Objection, argue that their indemnification claims against the estate provide the Bankruptcy Court with jurisdiction over the third-party claims. They also make clear their consent to this Court's entry of final judgment. Finally, they place this second motion in context (theirs), suggesting that there are no new facts in this case since the First Remand Motion was denied and there are no grounds upon which to change the outcome.

**III.**    **<u>Analysis</u>.**

All of the parties agree that 28 U.S.C. § 1452(b) provides broad discretion to a federal court deciding whether to remand a removed case to state court. *See ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns. Corp.),* 285 B.R. 127, 144 (Bankr. S.D.N.Y. 2002) (referring to the remand provisions of § 1452(b) as "discretionary remand"). Although Kenneth makes arguments suggesting I really have no choice in this matter, those arguments are directed almost entirely at the jurisdictional and constitutional questions present. Before getting to those, which I agree are critical considerations, I note a few points. First, in making my decision, I am guided by the Third Circuit rejoinder to do what is "reasonable, fair, [and] appropriate." *In re Seven Fields Dev. Corp.,* 505 F.3d at 245. Second, in reviewing the factors for doing what is reasonable, fair, and appropriate cited to me by the parties, I find that

---

[8] The Trustee argues that Chief Judge Torresen's decision in *In re Montreal Maine and Atlantic Ry., Ltd.,* No. 1:13-MC-00184-NT, 2014 WL 1155419 (D. Me. March 21, 2014), is instructive on the issue of related-to jurisdiction in this case, and suggests that her ruling there supports his argument that the third-party claims against Jeffrey and Robert are in fact related to the bankruptcy case.

7

although the parties enumerate them differently, they share the same essential focuses. Both look to the following: what is the nature of the action sought to be removed, how closely intertwined with the bankruptcy is it, is there a particular expertise demanded in considering the issues in the case, has a jury trial been demanded, comity, will the result of my decision lead to inconsistency or duplication, and is there any prejudice to the involuntarily removed party? *E.g., Schumacher v. White,* 429 B.R. at 405; *In re AK Servs., Inc.,* 159 B.R. at 80. Applying these factors to the facts before me, and mindful of the travel of this case to date, including my denial of the First Remand Motion,[9] I decline to exercise my discretion to remand and will therefore deny Kenneth's motion.

     First, Kenneth is correct that, to date, all of the claims filed in this case are based on state law. Initially, that fact would seem to militate towards remand, especially given that comity[10] is a factor in my decision. But, not all is at it appears at first blush. What started out as litigation between a Maine company suing its former CEO and majority shareholder and his new company, and that majority shareholder in turn suing new management of the company, has now evolved to include a chapter 7 trustee pursuing and (as he asserts) filing new claims that are property of the Debtor's estate in order to augment that estate and increase its value for the benefit of creditors. (Indeed, Kenneth himself concedes that the original claims brought by the Debtor against Applied and him are "related to" the bankruptcy case and thus within the limits of my jurisdictional reach.) What is also indisputable is that both ownership and damages questions related to certain technologies that were sold during the travel of the bankruptcy case while it

---

[9] Obviously, I am aware of my earlier denial of the First Remand Motion, and persuaded that although it is law of the case in this litigation, Kenneth's second motion (filed by new counsel, which does not relieve him of the doctrine's application) also fails on its own merits.

[10] Comity "'focuses on the state's interest in developing its law and applying its law to its citizens.'" *In re Adelphia Commc'ns. Corp.,* 285 B.R. at 146 (quoting *Renaissance Cosmetics, Inc. v. Development Specialists, Inc.,* 277 B.R. 5, 16 (S.D.N.Y. 2002)).

was in Chapter 11, have become a central issue in the litigation. The Trustee has taken time to investigate those claims and interests and has made clear his intention to pursue them, as well as damage claims against Kenneth, and, importantly, Jeffrey and Robert as well. Thus, this is not a case of two or more non-debtors pursuing state law causes of action. Instead, it is one of a bankruptcy trustee pursuing and defending claims in an effort to perform his statutory duty of collecting and distributing property of the estate. When viewed in that light, it becomes easier to see that the very nature of the action has changed, and, in fact, resolution of the issues in this case are critical to resolution of the bankruptcy itself.

With specific reference to the factors listed above, I find that the nature of the action, although involving state law claims, is not only closely related to the bankruptcy estate but also deeply intertwined with it. Further, although it is true that the claims are state law claims, they are not novel or obscure, and bankruptcy judges regularly decide issues of state law. *See, e.g., In re Adelphia Commc'ns. Corp.,* 285 B.R. at 145-46 (same). Kenneth has pointed to no specific prejudice that will result to him if the case stays in this Court.[11] To the contrary, I note that he has proved himself fully capable and adept at defending his rights in the Bankruptcy Court. As for Kenneth's jury trial demand, it is true that I cannot conduct a jury trial without his consent, 28 U.S.C. § 157(e), which he has not, as is his right, provided. DE 158. But even if I granted Kenneth's jury trial demand, that would not foreclose in any way this case being decided in federal court – in the Bankruptcy Court up to trial and then in the District Court. *McCord v. Papantoniou,* 316 B.R. 113, 125-26 (E.D.N.Y. 2004) (denying non-debtor defendant's motion to withdraw the reference in which she argued that her entitlement to a jury trial and her lack of

---

[11] In his motion, Kenneth describes the parade of horribles that will flow from my decision here, but those demons are not there. His fears of extra time and expense that will result from a bifurcation of the so-called primary and third-party claims are unfounded. *See infra* pp. 10-13. To say nothing of the fact that Kenneth himself sought a bifurcation of the third-party claims while the case was in state court.

9

consent to that trial in the bankruptcy court was sufficient for the district court to exercise jurisdiction; determining that "judicial economy favors keeping [the] proceeding involving core and 'related' claims in the bankruptcy court for pretrial purposes.").

Which leaves Kenneth's central argument: that because I, according to him, have no jurisdiction over the third-party claims, they must be remanded, and it makes no sense and would be a wasteful and duplicative effort for all to bifurcate this case. *But see supra* note 11. As noted above, the third-party claims are state law claims brought by Kenneth, a non-debtor, against Jeffrey and Robert, also non-debtors. The claims arise out of the same set of facts that gave rise to the primary claims now being pursued by the Trustee against Kenneth. The Trustee asserts that some of Kenneth's claims against Jeffrey and Robert may belong to the Debtor and that he, as the Trustee, intends to pursue claims against Jeffrey and Robert that are similar to those in the Third-Party Complaint. Jeffrey and Robert have indicated both that they are aware of the Trustee's intentions, and that they consent to this Court's issuing final orders in this adversary. Finally, both Jeffrey and Robert have filed claims for indemnification in the bankruptcy.

In *Gupta v. Quincy Med. Ctr.,* 858 F.3d 657 (1st Cir. 2017), the First Circuit recently limned the contours of bankruptcy court jurisdiction. "The general grant of bankruptcy jurisdiction is found in 28 U.S.C. § 1334, which establishes two main categories of bankruptcy matters over which the district courts have jurisdiction: 'cases under title 11,' 28 U.S.C. § 1334(a), and 'proceedings arising under title 11, or arising in or related to cases under title 11,' 28 U.S.C. § 1334(b)." *Id.* at 661 (citations omitted). Cases under title 11 "refer[s] only to the bankruptcy petition itself, and it is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place." *Id.* at 661-62. "[P]roceedings 'arise under title 11' when the Bankruptcy Code itself creates the cause of action," *Id.* at 662, "arise in" when the

proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy," *Id.* at 662-63 (quoting *Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.),* 292 F.3d 61, 68 (1st Cir. 2002)), and are "related to" when they "'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'" *Id.* at 663 (quoting *In re Middlesex Power Equip. & Marine, Inc.,* 292 F.3d at 68). It is this last grant of jurisdictional power – 'related to' – that applies here. In order for me to have jurisdiction over the third-party claims, they must "have some potential effect on the bankrupt estate." *Id. See also Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.),* 410 F.3d 100, 105 (1st Cir. 2005) (recognizing Congress's purpose in making 'related to' bankruptcy court jurisdiction wide-ranging, "to enable them to deal efficiently and effectively with the entire universe of matters connected with the bankruptcy estate."); *Pacor, Inc. v. Higgins,* 743 F.2d 984, 995 (3rd Cir. 1984), *overruled in part on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 124-25 (1995) ("[A] civil proceeding is related to bankruptcy [if] the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.").

In *Gupta,* the First Circuit noted there was no 'related to' jurisdiction over state law contract claims filed by former executives of the debtor against the purchaser of the debtor's assets, because pursuit of the claims against the non-debtor buyer "could have no conceivable impact upon the Debtor's bankruptcy estate." *Id.* at 664. But that is not the case here. The Trustee has asserted both that he has claims against Jeffrey and Robert and that he believes some of Kenneth's third-party claims against them belong to the estate. Although he has not yet filed

11

those claims, I take him at his word and expect he will do so in short order, and at the very least his assertion is relevant to my weighing of the equities. Obviously, any recovery will inure to the benefit of the estate. Additionally, the allegations by and among all of the parties include, at their core, the ownership rights to certain technology and related patents, and resolution of those issues (not to mention damages, if any) is essential to any further administration of the estate. Finally, third-party defendants Jeffrey and Robert have filed indemnification claims against the estate. Should a judgment be entered against them on the third-party claims, they will, in turn, seek to be made whole from the assets of the estate, thus diluting any recovery for other unsecured creditors.

In *In re Montreal Maine & Atlantic Ry., Ltd.,* No. 1:13-MC-00184-NT, 2014 WL 1155419 (D. Me. March 21, 2014), Chief Judge Torresen scanned the landscape of cases dealing with indemnification claims and jurisdiction, and found her answer right here in Maine. "Courts in the District of Maine have stayed true to the Third Circuit's reasoning. A lawsuit against a defendant who has an unconditional right to indemnification from the debtor has the potential to affect distributions to unsecured creditors in a debtor's bankruptcy." *In re Montreal Maine & Atlantic Ry., Ltd.,* 2014 WL 1155419, at *6 (citing *TD Bank, N.A. v. Sewall,* 419 B.R. 103, 106-07 (D. Me. 2009)). Reviewing the indemnification claims of the various non-debtor defendants against the debtor, Chief Judge Torresen found related-to jurisdiction as to only one, CIT, because only it had an absolute and unconditional contractual indemnification right against the debtor railroad. *Id.* at *9.[12] In *Cent. Maine Rest. Supply v. Omni Hotels Mgmt. Corp.,* 73 B.R.

---

[12] The contract at issue stated, in relevant part:

> Lessee [the Railway] agrees to defend, indemnify and hold Lessor [CIT] and its affiliates, and their respective, authorized representatives, directors, officers, employees, successors and assigns harmless from and against any claim (including without limitation relating to environmental matters) of whatsoever nature and regardless of the cause thereof arising

1018, 1023-24 (D. Me. 1987), Judge Carter found no related-to bankruptcy jurisdiction in a case in which the non-debtor defendant's indemnification rights were "subject to a number of conditions that render [its] right to indemnification uncertain." Those conditions included a prompt claims notification provision, a requirement that the defendant must "tender[] any such claim to the Debtor for defense and payment, if requested[,]" and a temporal limitation of six months from the date of plan confirmation during which funds would be available. *Id.*

>    The indemnification language of the Debtor's Operating Agreement states:
>
>> The LLC shall indemnify any Member, Manager or officer made a party to a proceeding because such Member, manager or officer acted or failed to act on behalf of the LLC against liability for a judgment, settlement, penalty, fine, … or reasonable expenses incurred with respect to a proceeding, if the Member, Manager or officer conducted himself in good faith and reasonably believed his conduct was not opposed to the best interest of the LLC.

Case No. 15-20640, claim No. 3-1, Ex. A, § 5.09. There are no conditions to Jeffrey and Robert's rights of indemnification as were found in *Central Maine Restaurant Supply*.[13] Moreover, both Jeffrey and Robert have timely filed claims against the estate and no objection to those claims has been filed. *See* Fed. R. Bankr. P. 3001(f) (proof of claim correctly executed and filed constitutes prima facie evidence of the validity and amount of claim); *Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.),* 993 F.2d 915, 925 (1st Cir. 1993).

---

> out of, or in connection with or resulting from: …(iv) the occurrence of any event or circumstance described in Section 14A, [listing, inter alia, "any liability, claim, loss, damage or expense of any kind or nature caused, directly or indirectly, by any unit or any inadequacy thereof"], including, without limitation, any claim based upon doctrines of product liability or strict or absolute liability in tort or imposed by statute ….

[13] Judge Carter's consideration of judicial economy further distinguishes *Central Maine Restaurant Supply*. Whereas he found that referring the case before him to the bankruptcy court would not serve the interest of judicial economy, *Cent. Maine Rest. Supply,* 73 B.R. at 1024, the opposite is true here. Keeping this case where it has been for the past two years, and where bankruptcy issues have become paramount, serves those interests well.

The indemnification claims, the effect of this litigation on the administration of the bankruptcy estate, and the Trustee's pursuit of claims convince me that the entire case belongs together and it belongs in this Court, until such time, if any, that it must go to the District Court.

IV. **Conclusion.**

For the foregoing reasons, Kenneth Carr's Motion to Remand will be denied. A separate order consistent with this Memorandum shall enter.

Dated: August 11, 2017                                    /s/ Peter G. Cary
                                                          Hon. Peter G. Cary
                                                          United States Bankruptcy Judge
                                                          District of Maine